# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

DAVID BATTON, )
　)
　Plaintiff, )
　)
v. ) Case No. CIV-14-651-R
　)
JAMES GREGORY MASHBURN, )
individually; and JOHN and JANE )
DOES, )
　)
　Defendants. )

## ORDER

Before the Court is Defendant Mashburn's Motion to Dismiss. Doc. No. 7. This action arises from Plaintiff's termination by Mashburn, a District Attorney, from his position as an assistant district attorney for the Twenty-First Prosecutorial District. Compl. ¶¶ 9, 31. Plaintiff brings claims against Mashburn in his individual capacity under 42 U.S.C. § 1983 for violation of his First Amendment, due process, and equal protection rights, tortious interference with contract, tortious interference with prospective economic advantage, intentional infliction of emotional distress, blacklisting, and conspiracy. *Id.* at 11-15. Mashburn moves to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and Rule 12(b)(1) for lack of subject matter jurisdiction. Doc. No. 7, at 9. The motion is granted in part and denied in part.

**Background**

According to the Complaint, Plaintiff was hired to work in the civil division of the District Attorney's office to represent Cleveland, McClain, and Garvin Counties. Compl. ¶¶ 9, 12. His job included "being familiar with current events and developments in the law and keeping county officials informed regarding the potential impacts of their policies or actions." *Id.* ¶ 20. On March 28, 2012, Plaintiff prepared a memo for Mashburn, explaining a recent decision from the Tenth Circuit Court of Appeals and its impact on the release of booking photos. *Id.* ¶¶ 24-25. According to Plaintiff, "[e]veryone agreed such photos did not have to be released by the Sheriff under state or federal law." *Id.* ¶ 25. After providing the memo to the Sheriff, the Sheriff "elected to stop releasing all booking photos unless it served a valid law enforcement purpose." *Id.*

Private individuals then began to make complaints about their inability to obtain booking photos. *Id.* ¶ 27. When Fox 25 requested an interview "regarding the implications of the Tenth Circuit opinion for the counties in Oklahoma," Mashburn required Plaintiff to attend to make the public aware "that the DA's office was not promoting the policy of the Sheriff." *Id.* Plaintiff participated in the interview, and explained "the legal basis for the Sheriff's decision." *Id.* According to the Complaint, the article, published on June 19, 2012, "misstated several points … and indicated the county rather than the Sheriff's department was responsible for the decision of the Sheriff," because the Sheriff "apparently indicated to the reporter he was relying on the DA's office." *Id.* ¶ 28. Allegedly upset with the article and how law enforcement officers would perceive him, Mashburn terminated Plaintiff three days later and had him escorted

by armed guards from the office, after informing the news media about Plaintiff's termination. *Id.* ¶¶ 29, 31-32. Mashburn also denied Plaintiff's requests for a name-clearing hearing. *Id.* ¶ 33.

## Standard of Review

In considering a motion under Rule 12(b)(6), the Court must determine whether Plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when the complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 570 (citation omitted). Although decided within an antitrust context, *Twombly* stated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). For the purpose of making the dismissal determination, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

## Analysis

### A. Official Capacity Claims

Mashburn argues that he is immune from Plaintiff's claims against him in his official capacity under the Eleventh Amendment. Doc. No. 7, at 11-12. Because Plaintiff has consented to the dismissal of Mashburn as a party in his official capacity, Doc. No. 11, at 2, this issue is now moot.

## B. GTCA

Mashburn next argues that Plaintiff failed to comply with the notice requirements of the Oklahoma Governmental Tort Claims Act ("GTCA"), and thus any tort claims subject to these requirements must be dismissed. Doc. No. 7, at 13-15. These include any claims against a state governmental entity. *Id.* at 13. In response, Plaintiff states that he "intentionally did not file under the governmental tort claims procedures" because he intended to bring claims only against Defendants in their individual capacities. Doc. No. 10, at 2. Because Plaintiff's claims against Mashburn in his official capacity have been dismissed, this issue is also moot.[1]

## C. Qualified Immunity

Plaintiff brings his due process and equal protection claims, as well as his claims arising under the First Amendment, pursuant to § 1983. Compl. at 11-12. Section 1983 "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Mashburn contends that he is entitled to qualified immunity for Plaintiff's federal law claims. Doc. No. 7, at 16. Qualified immunity shields from liability government officials performing discretionary functions "if their conduct

---

[1] Mashburn asserts in his reply brief that if Plaintiff is attempting to state a claim for a public policy violation against Mashburn in his individual capacity, this claim must also be dismissed because such a claim is not cognizable against government officials in their individual capacity. Doc. No. 14, at 2. The Court does not interpret Plaintiff's arguments as intending to state a claim for a public policy violation. First, Plaintiff asserts no such claim in his Complaint. Second, he raises the issue of public policy in his response to Mashburn's Motion to Dismiss only in support of his claim under § 1983 for a violation of his First Amendment rights. Doc. No. 10, at 8; Compl. 11-12. Therefore, because Plaintiff is not asserting a claim against Mashburn for wrongful termination in violation of public policy, the Court will not address the merits of such a claim.

does not violate clearly established rights of which a reasonable government official would have known." *Perez v. Unified Gov't of Wyandotte Cnty./Kansas City, Kansas*, 432 F.3d 1163, 1165 (10th Cir. 2005). Once the defendant asserts the defense of qualified immunity, the plaintiff bears the burden of showing "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Booker*, 745 F.3d at 411. The Court applies "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (quoting *Shero v. City of Grove, Oklahoma*, 510 F.3d 1196, 1200 (10th Cir. 2007)).

   1. **Freedom of Speech**

Plaintiff alleges that his termination was a violation of his freedom of speech under the First Amendment. Compl. ¶ 43. Mashburn argues that because Plaintiff's statements were made pursuant to his official duties as an assistant district attorney, this claim fails on its face. Doc. No. 7, at 23-24. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Cehallos*, 547 U.S. 410, 421 (2006). The Tenth Circuit takes a "broad view of the meaning of speech that is pursuant to an employee's official duties." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010) (quoting *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324) (10th Cir. 2008)). Speech is made pursuant to an employee's official duties "if it involves 'the type of activities that

5

[the employee] was paid to do." *Id.* (quoting *Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007)).

According to the Complaint, "[o]n a regular basis, Plaintiff in his role as counsel to the county officials would be requested to talk with various news media or reporters on behalf of the county and/or elected officials regarding matters of public concern." Compl. ¶ 20. Additionally, Mashburn required Plaintiff to appear for the Fox 25 interview to demonstrate "that the DA's office was not promoting the policy of the Sheriff." *Id.* ¶ 27. After the interview, a reporter from the Daily Oklahoman called, and "[t]his call was forward from MASHBURN'S secretaries to Plaintiff [to] address the matters of public concern on behalf of the Sheriff." *Id.* ¶ 28. Finally, Plaintiff was terminated because of his "conduct and speech in responding to inquires [sic] about the interpretation of the status of potential personal privacy interests as compared to media interests." *Id.* ¶ 42.

Plaintiff does not adequately respond to Mashburn's claim that his statements were made pursuant to his official duties, and thus are not protected. He merely mischaracterizes Mashburn's argument as being "that all speech while employed by the State will constitute speech that is not protected." Doc. No. 10, at 12.[2] It is clear from the face of the Complaint that Plaintiff's "expressions were made pursuant to his duties" as an assistant district attorney, and this is "[t]he controlling factor" in this case. *See Garcetti*, 547 U.S. at 421. Conducting interviews with the news was, partly, what

---

[2] Plaintiff states in the concluding paragraph of his brief that "Oklahoma provides greater protection in its Constitution and statutes than addressed in *Garcetti*." Doc. No. 10, at 25. But Plaintiff brings his First Amendment claims under the U.S. Constitution, not Oklahoma law. *See* Compl. At 11-12. Therefore, the Court does not consider whether Plaintiff states a claim under Oklahoma law on the issue of freedom of speech.

Plaintiff was paid to do on a "regular basis." Accordingly, he was not speaking as a citizen for First Amendment purposes, and has therefore not alleged a violation of his First Amendment rights. His freedom of speech claim against Mashburn is dismissed on the basis of qualified immunity.

### 2. Freedom of Association

Plaintiff also alleges a violation of his right to freedom of association under the First Amendment, based on his affiliation with the ACLU and the Cleveland County Bar Association. Compl. ¶¶ 37, 50. Mashburn does not specifically address this claim in his Motion to Dismiss, but does state that he is entitled to qualified immunity on all of Plaintiff's constitutional claims. Doc. No. 7, at 16. In response to the Motion to Dismiss, Plaintiff argues that he "had a right to be a member of any legal group he so chose as long as such did not conflict with his employment obligations." Doc. No. 10, at 20. According to the Complaint, "not long prior to Plaintiff's termination," Mashburn "made degrading remarks regarding Plaintiff's long standing membership in the ACLU," and he was "looked down upon for being a member of the Cleveland County Bar Association" ("CCBA"). Compl. ¶ 37. Although not specifically alleged, it appears that Plaintiff claims one of the reasons Mashburn fired him was because of his membership in the ACLU and the CCBA. Because Mashburn does not state why he is entitled to qualified immunity on Plaintiff's freedom of association claim, Plaintiff's argument in response to this argument does not establish the *absence* of qualified immunity on this claim, and Plaintiff has requested leave to amend his Complaint, Doc. No. 10, at 6, the freedom of association claim is dismissed with leave to amend.

### 3. Due Process

Plaintiff also alleges that he was denied procedural and substantive due process by being denied a "property interest in his continued employment" and a "liberty interest in his good name and reputation." Compl. ¶ 48. The only reference to Plaintiff's due process claims in the Motion to Dismiss is under the section discussing the conspiracy claim in which Mashburn states that because Plaintiff was an at-will employee, he "did not possess a property interest in his continued employment, and therefore, had no corresponding 'substantive due process right.'" Doc. No. 32, at 7 (citation omitted). But Mashburn's contention regarding Plaintiff's at-will status is irrelevant at this stage because Plaintiff alleges that a contract was in place guaranteeing his continued employment. Compl. ¶ 15. In his response, Plaintiff argues that "qualified immunity is not available for a deprivation of a liberty interest without due process of law." Doc. No. 10, at 7. Contrary to Plaintiff's contention, qualified immunity is available for a claim of deprivation of a liberty interest without due process of law when a plaintiff fails to state a claim for violation of that right, or the right was not clearly established. *See, e.g.*, *Elwell v. Byers*, 699 F.3d 1208, 1219 (10th Cir. 2012). For the same reasons the Court dismisses Plaintiff's claim for violation of his right of association, the due process claims are dismissed with leave to amend.

### 4. Equal Protection

Plaintiff alleges that Mashburn violated his right to equal protection under the law. Compl. ¶ 50. Neither party addresses the merits of this claim in their briefing. For the

same reasons Plaintiff's due process and right of association claims are dismissed, Plaintiff's equal protection claim is also dismissed with leave to amend.

### D. Tortious Interference with Contract

Mashburn argues that Plaintiff fails to state a claim on his tortious interference with contract claim because there was no contract governing Plaintiff's employment. Doc. No. 7, at 27. But Plaintiff alleges in his Complaint that he "was paid pursuant to a contract that specifically required that [he] remain as the civil attorney assigned to Cleveland County," and that this contract was with the Board of County Commissioners. Compl. ¶¶ 15, 53. Although it is unclear from the Complaint who actually employed Plaintiff during the relevant time period, viewing the facts in the light most favorable to Plaintiff, the Court assumes he was employed by the other party to the alleged contract, the Board of County Commissioners.[3] Taking these factual allegations as true, this claim does not fail for the sole reason that Mashburn disputes the existence of a contract.[4]

### E. Tortious Interference with Prospective Economic Advantage

Mashburn next argues that "Plaintiff has no factual allegations to support his outlandish claim of tortious interference with 'prospective economic advantage.'" Doc.

---

[3] Otherwise, Mashburn could not be held liable for tortiously interfering with his own contract. *See Wilspec Techs., Inc. v. DunAn Holding Group, Co.*, 204 P.3d 69, 74 (Okla. 2009) ("[T]he claim is viable only if the interferor is not a party to the contract." (citing *Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1209 (Okla. 1996)).

[4] Although Plaintiff alleges the existence of a contract for his employment in his Complaint, he also states in his response to the Motion to Dismiss that he "does not dispute generally the current state of the law regarding employment at will of assistant district attorneys." Doc. No. 10, at 22. This statement appears to concede Mashburn's contention that there was no contract, but for the fact that later in his brief, Plaintiff states that he had "reasonable expectations of continued employment pursuant to the *continuing agreement* with the county and its funding of Plaintiff's salary." *Id.* at 23 (emphasis added). Because the Court must take all allegations in the Complaint at true at the motion to dismiss stage, and Plaintiff's response brief cannot be taken to concede the nonexistence of a contract, Plaintiff's claim for tortious interference with contract remains.

No. 7, at 27-28. It is unclear whether Mashburn disputes the existence of such a cause of action under Oklahoma law, or simply contends that Plaintiff has failed to allege sufficient facts to support such a claim.

A claim for tortious interference with prospective economic advantage does exist in Oklahoma. *Brock v. Thompson*, 948 P.2d 279, 293 n.58 (Okla. 1997); *McNickle v. Phillips Petroleum Co.*, 23 P.3d 949, 953 (Okla. Civ. App. 1999). It "usually involves interference with some type of reasonable expectation of profit." *Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846, 847-48 (Okla. Civ. App. 1984). The elements of such a claim are "the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted." *Lakeshore Cmty. Hosp., Inc. v. Perry*, 538 N.W.2d 24, 27 (Mich. Ct. App. 1995); *see also Brock*, 948 P.2d at 293 n.58 (citing *Lakeshore* "for the elements of tortious interference with … prospective economic relations"); *Gonzales v. Sessom*, 137 P.3d 1245, 1249 (Okla. Civ. App. 2006) (listing the same elements).

Plaintiff has sufficiently alleged each of the elements of this tort. First, he alleges that he was never disciplined or reprimanded, and his personnel file was free of adverse documentation. Compl. ¶ 11. He also alleges that he received regular raises and was recognized as employee of the month. *Id.* The Complaint thus sufficiently alleges the existence of a valid business expectancy, or a reasonable expectation of profit, even

absent a contract for continued employment.[5] Second, because Plaintiff alleges that Mashburn was his supervisor, that is sufficient for the Court to infer that Mashburn was aware of Plaintiff's employment record, and thus, his reasonable expectation of profit. *See* Compl. ¶¶ 12, 14, 16. Third, Plaintiff alleges that Mashburn intended to interfere with his reasonable expectations and cause him "humiliation and harm" by terminating him. *See id.* ¶ 31. Finally, Plaintiff has been harmed by Mashburn's interference because he has lost his position and has been "blacklisted." *Id.* ¶ 35. These allegations are sufficient to state a claim for tortious interference with prospective economic advantage.

### F. Intentional Infliction of Emotional Distress

Mashburn next argues that Plaintiff fails to state a claim for intentional infliction of emotional distress because he does not allege conduct "that amounts to outrageous, indecent, or excoriating behavior." Doc. No. 7, at 29. For this tort, Plaintiff must sufficiently allege the following elements: "1) the alleged tortfeasor acted intentionally or recklessly; 2) the alleged tortfeasor's conduct was extreme and outrageous; 3) the conduct caused the plaintiff emotional distress; and 4) the emotional distress was severe." *Durham v. McDonald's Restaurants of Oklahoma, Inc.*, 256 P.3d 64, 66 (Okla. 2011) (citing *Computer Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002)).

---

[5] *See* McNickle, 23 P.3d at 951 ("In the evolution of the tort of interference with the employment contractual relationship in Oklahoma, there is nothing to suggest that the tort would not apply in cases of interference with an at-will contract of employment when the party interfering acts without privilege." (footnote omitted)); *see also Harman v. Oklahoma ex rel. N. Oklahoma Bd. of Regents*, No. CIV-07-327-C, 2007 WL 1674205, at *3 (W.D. Okla. June 7, 2007) ("Although there apparently is no Oklahoma Supreme Court authority directly recognizing such a claim [intentional interference with prospective economic relations] in the at-will employment context … lower Oklahoma courts have recognized the cause of action without hesitation.").

"The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress." *Computer Publ'ns*, 49 P.3d at 735. This tort does not extend "to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986) (quoting Restatement of Torts (Second), § 46, comment d). "Nothing short of '*[e]xtraordinary* transgressions of the bounds of civility' will give rise to liability for intentional infliction of emotional distress." *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995) (quoting *Merrick v. N. Natural Gas Co.*, 911 F.2d 426, 423 (10th Cir. 1990)). In this analysis, the Court must consider the totality of the circumstances in which the conduct occurred. *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 856 (10th Cir. 2005) (citing *Eddy*, 715 P.2d at 77; *Starr*, 54 F.3d at 1559).

Plaintiff alleges that he was escorted by armed guards from his office, and that Mashburn had notified the sheriff and news media about his termination. Compl. ¶ 32. This made the public believe that he had "committed some criminal or wrongful act which required his immediate removal when such was not true." *Id.* ¶33. These allegations do not constitute extreme and outrageous conduct under Oklahoma law. First, considering the setting in which this occurred, Plaintiff alleges that he was terminated because Mashburn was unhappy with how he conveyed to the public the District Attorney's policy with regard to the issue of under what circumstances the Sheriff should grant booking photo requests. In order to convey the office's true view on this issue, Mashburn chose to make Plaintiff's termination a public event. This is neither "beyond all possible bounds of decency," nor "utterly intolerable in a civilized community."

*Brock*, 948 P.2d at 294. Oklahoma appellate courts have found this standard of outrageous conduct not satisfied in far worse scenarios.[6] Accordingly, Plaintiff's claim for intentional infliction of emotional distress is dismissed.[7]

**G. Conspiracy**

Mashburn argues that Plaintiff fails to state a claim for conspiracy because he has not alleged an underlying unlawful act. Doc. No. 7, at 31. "A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or do a lawful act by unlawful means." *Brock*, 948 P.2d at 294 (footnote omitted). A mere conspiracy is insufficient. "To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means." *Id.* at 294 (footnote omitted). If the act complained of and the means employed are lawful, there is no liability. *Id.*

The Court has already determined that Plaintiff states a claim for tortious interference with prospective economic advantage. This is an unlawful act that can serve as the basis for Plaintiff's civil conspiracy claim. Further, Plaintiff alleges that "ALEXANDER and MASHBURN devised a scheme to mislead the press and public to avoid any adverse publicity," and that although "the commissioners desired to keep

---

[6] *See, e.g.*, *Mirzaie v. Smith Cogeneration, Inc.*, 962 P.2d 678, 682-84 (Okla. Civ. App. 1998) (finding no outrageous conduct when supervisor made a derogatory sexual comment about the plaintiff to other staff members, woke him up at 3:00 AM to do unnecessary work, and terminated him two hours before his scheduled wedding); *Zahorsky v. Cmty. Nat'l Bank of Alva*, 883 P.2d 198, 199-200 (Okla. Civ. App. 1994) (finding no outrageous conduct when employer's President did not terminate an employee for forcing the plaintiff to have sex with him at least seven times, after he learned about the conduct).

[7] In his Complaint, under the heading "Intentional Infliction of Emotional Distress," Plaintiff also alleges a violation of Oklahoma's blacklisting statute, OKLA. STAT. ANN. tit. 40, § 172 (West). Compl. at 14. There is a private right of action under this statute. *Id.*, § 173 (West) ("[A]ny person so blacklisted shall have a right of action to recover damages."). Because Mashburn does not specifically argue that Plaintiff fails to state a claim for blacklisting, but rather focuses only on the claim for intentional infliction of emotional distress, this claim remains.

Plaintiff as counsel … MASHBURN and ALEXANDER elected to intentionally cause Plaintiff humiliation and harm." Compl. ¶¶ 30-31. These allegations are sufficient to state a claim for civil conspiracy.

### H. Injunctive Relief

Finally, Mashburn argues that Plaintiff has failed to allege sufficient facts to support his "claim" for injunctive relief. Doc. No. 7, at 32. But injunctive relief is a remedy, not a claim, and is therefore not subject to dismissal under Rule 12(b)(6). *Dalcour v. City of Lakewood*, No. 08-cv-00747-MSK-KLM, 2009 WL 3162235, at *7 (D. Colo. Sept. 30, 2009). Moreover, Plaintiff states that he is not currently seeking a preliminary injunction. Doc. No. 10, at 25. Therefore, the Court declines to dismiss Plaintiff's request for injunctive relief.

### **Conclusion**

In accordance with the foregoing, Mashburn's Motion to Dismiss [Doc. No. 7] is GRANTED in part and DENIED in part. Plaintiff's freedom of speech, freedom of association, due process, equal protection, and intentional infliction of emotional distress claims are dismissed. His claims for tortious interference with contract, tortious interference with prospective economic advantage, blacklisting, and conspiracy remain. Because Plaintiff's request for injunctive relief is a remedy and not a claim, the Court declines to dismiss this request. If Plaintiff seeks to amend his Complaint, he must do so by February 24, 2015.

IT IS SO ORDERED this 3rd day of February, 2015.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE