IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| DAVID BATTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-14-651-R |
| JAMES GREGORY MASHBURN, individually, and in his official capacity as District Attorney for the Twenty-first Prosecutorial District, (aka Greg Mashburn); and JOHN and JANE DOES, | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Mashburn's Motion to Dismiss Plaintiff's First Amended Complaint. Doc. No. 26. This action arises from Plaintiff's termination by Mashburn, a District Attorney, from his position as an assistant district attorney for the Twenty-first Prosecutorial District. First Am. Compl. ¶¶ 8, 28. Plaintiff brings claims against Mashburn in his individual capacity[1] under 42 U.S.C. § 1983 for violation of his First Amendment right of association and conspiracy, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* at 9-11. Mashburn

---

[1] Plaintiff filed a Notice of Voluntary Dismissal Regarding the State of Oklahoma or Any Official Capacity Party on December 15, 2014, before filing his First Amended Complaint. Doc. No. 11. In his First Amended Complaint, the caption lists Mashburn as a defendant in his official capacity, but states in the text of the complaint that claims are brought against Mashburn only in his individual capacity. First Am. Compl. 1. In his response to the motion now at issue, Plaintiff states that he intended to bring a claim for tortious interference with prospective economic advantage against Mashburn only in his individual capacity. Doc. No. 27, at 10. Mashburn assumes that Plaintiff's claims are still brought against him only in his individual capacity. Doc. No. 26, at 22 ("Plaintiff has no claims against that State, because such allegations would involve the sovereign immunity of the State pursuant to Oklahoma's GTCA." (citation omitted)). The Court assumes that Plaintiff intended to bring claims against Mashburn only in his individual capacity.

moves to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Doc. No. 26, at 9. For the following reasons, the motion is granted in part and denied in part.

## Facts

According to the First Amended Complaint, Plaintiff was hired as an assistant district attorney to work in the civil division to represent Cleveland, McClain, and Garvin Counties. First Am. Compl. ¶¶ 8, 11. His duties included "being familiar with current events and developments in the law and keeping county officials informed regarding the potential impacts of their policies or actions." *Id.* ¶ 17. On March 28, 2012, Plaintiff prepared a memo for Mashburn, explaining a recent decision from the Tenth Circuit Court of Appeals and its impact on the release of booking photos. *Id.* ¶¶ 21-22. According to Plaintiff, "[e]veryone agreed such photos did not have to be released by the Sheriff under state or federal law." *Id.* ¶ 22. After providing the memo to the Sheriff, the Sheriff "elected to stop releasing all booking photos unless it served a valid law enforcement purpose." *Id.*

Private individuals then began to make complaints about their inability to obtain booking photos. *Id.* ¶ 24. When Fox 25 requested an interview "regarding the implications of the Tenth Circuit opinion for the counties in Oklahoma," Mashburn required Plaintiff to attend to make the public aware "that the DA's office was not promoting the policy of the Sheriff." *Id.* Plaintiff participated in the interview, and explained "the legal basis for the Sheriff's decision." *Id.* According to the complaint, the article, published on June 19, 2012, "misstated several points … and indicated the county

rather than the Sheriff's department was responsible for the decision of the Sheriff," because the Sheriff "apparently indicated to the reporter he was relying on the DA's office." *Id.* ¶ 25. Allegedly upset with the article and concerned about how law enforcement officers would perceive him, Mashburn terminated Plaintiff three days later and, after informing the media about his termination, had him escorted out of the office by armed guards. *Id.* ¶¶ 26, 28-29. Plaintiff also alleges that not long prior to his termination, Mashburn made "degrading remarks" regarding his membership in the ACLU and looked down on him for being a member of the Cleveland County Bar Association. *Id.* ¶ 34.

## **Standard of Review**

In considering a motion under Rule 12(b)(6), the Court must determine whether Plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when the complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 570 (citation omitted). Although decided within an antitrust context, *Twombly* stated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). For the purpose of making the dismissal determination, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

## Analysis

**A. Qualified Immunity**

Plaintiff brings his First Amendment freedom of association claim pursuant to § 1983. First Am. Compl. at 9-10. Section 1983 "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Cillo v. City of Greenwood Village*, 739 F.3d 451, 459 (10th Cir. 2013). Mashburn contends that he is entitled to qualified immunity for Plaintiff's First Amendment claim. Doc. No. 26, at 11. Qualified immunity shields from liability government officials performing discretionary functions "if their conduct does not violate clearly established rights of which a reasonable government official would have known." *Perez v. Unified Gov't of Wyandotte Cnty./Kansas City, Kansas*, 432 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted). Once a defendant asserts qualified immunity, the plaintiff bears the burden of showing "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460 (citations omitted). The Court applies "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally." *Shero v. City of Grove, Oklahoma*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citation omitted).

**1. Plaintiff Alleges a Violation of a Constitutional Right**

First, taking the allegations in the First Amended Complaint as true, Mashburn has stated a claim for a violation of his right of association. "The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or

4

non-affiliation unless their work requires political allegiance." *Snyder v. City of Moab*, 354 F.3d 1179, 1184 (10th Cir. 2003) (citation omitted). For a terminated public employee to succeed on a claim for a violation of this right, the following elements must be satisfied: "(1) political affiliation and/or beliefs were substantial or motivating factors in his [termination], and (2) his position did not require political allegiance." *Poindexter v. Bd. of Cnty. Comm'rs of Cnty. of Sequoyah*, 548 F.3d 916, 919 (10th Cir. 2008) (quoting *Barker v. City of Del City*, 215 F.3d 1134, 1138 (10th Cir. 2000) (internal quotation marks omitted) (citing *Branti v. Finkel*, 445 U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347 (1976)).

Plaintiff alleges that he was terminated, at least in part, based on his affiliation with the ACLU. First Am. Compl. ¶¶ 34, 37. In *NAACP v. Button*, the Supreme Court held "that the activities of the NAACP … are modes of expression and association protected by the First and Fourteenth Amendments." 371 U.S. 415, 428 (1963). Relying on its decision in *Button*, the Court later found in *In re Primus* that "[f]or the ACLU, as for the NAACP, litigation is not a technique of resolving private differences; it is a form of political expression and political association." 436 U.S. 412, 428 (1978) (footnote omitted) (quoting *NAACP v. Button*, 371 U.S. 415, 429, 431 (1963)) (internal quotation marks omitted). Accordingly, the *Primus* Court held that writing a letter to an individual advising her that free legal assistance is available from the ACLU is protected by the First Amendment's right of association. *Id.* at 414, 431. In *Copp v. Unified School District No. 501*, the Tenth Circuit construed *Button* "as protecting activities involving the assistance of litigation vindicating civil rights." 882 F.2d 1547, 1550 (10th Cir. 1989).

This includes "attending meetings on necessary legal steps" and "associating for the purpose of assisting persons seeking legal redress." *Id.* Based on the above authority, the Court finds that by being a member of the ACLU, Plaintiff is "associating [with a political organization] for the purpose of assisting persons seeking legal redress." Accordingly, he is protected from discrimination based on this political affiliation unless his work required political allegiance.[2]

### a) Substantial or Motivating Factor

Plaintiff has sufficiently alleged that his association with the ACLU was a substantial or motivating factor in his termination. He alleges that "not long prior" to his termination, Mashburn "made degrading remarks regarding Plaintiff's long standing membership in the ACLU … [and] indicated that a state prosecutor had no business in such an organization." First Am. Compl. ¶ 34. Construing the allegations in the light most favorable to Plaintiff, it is plausible that when Mashburn terminated Plaintiff, he was motivated, at least in part, by Plaintiff's membership in the ACLU.

---

[2] In his motion to dismiss, Mashburn focuses on two factors from the *Garcetti/Pickering* test. Doc. No. 26, at 13-14. Although the Court recognizes that the *Garcetti/Pickering* analysis is sometimes applicable in the freedom of association context, *see Cillo*, 739 F.3d at 462 (analyzing a right to associate with a Union claim under the *Pickering/Connick* test), that analysis does not apply when a plaintiff contends that a defendant violated his right to *political* association. *See Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999) ("Where a government employer takes adverse action on account of an employee's political association and/or political beliefs, we apply the test as developed in the *Elrod v. Burns* and *Branti v. Finkel* line of cases. Where a government employee takes adverse action because of an employee's exercise of his or her right of free speech, we apply the balancing test from *Pickering v. Board of Educ.* And *Connick v. Myers*." (internal citations omitted)); *see also Trujillo v. Huerfano Cnty. Bd. of Cnty. Comm'rs*, 349 F. App'x 355, 360 (10th Cir. 2009) (unpublished) ("[P]laintiffs argue that defendants violated their right to political association, and thus the district court incorrectly applied the *Pickering/Garcetti* free speech test instead of the *Elrod/Branti* political association analysis. We agree." (footnote omitted) (citing *Jantzen*, 188 F.3d at 1251)).

### b) Political Allegiance

The next question is whether Plaintiff's position as assistant district attorney working in the civil division required political allegiance. Whether political association is an appropriate job requirement is generally a question of fact, but the Court may resolve it as a matter of law if there are no facts in dispute concerning the duties of the position. *Snyder*, 354 F.3d at 1185. In this case, Mashburn bears the burden of proving that political association "is an appropriate requirement for the effective performance of the public office involved." *Id.* (citation omitted).

Mashburn does not address this issue; rather, he appears to assume that the ACLU is *not* a political organization. *See* Doc. No. 26, at 18-19 (distinguishing *Allen v. Kline*, 507 F. Supp. 2d 1150 (D. Kan. 2007), on the basis that "the plaintiff's claimed association in that matter was his political party affiliation and that he had been terminated by the newly elected DA of a different party"). This matter is before the Court on a motion to dismiss and not a motion for summary judgment, and there is no evidence in the record of Plaintiff's job duties.[3] Absent such evidence, the Court is unable to conclude that Plaintiff's position required political allegiance. Accordingly, Plaintiff has sufficiently alleged the deprivation of his right of association.

### 2. The Right Was Clearly Established

The Court also finds that the right at issue in this case was clearly established at the time of Plaintiff's termination. The test for determining whether a right is "clearly

---

[3] Although Mashburn directs the Court to an Oklahoma statute, OKLA. STAT. ANN. tit. 19, § 215.25, in which he contends the duties of an assistant district attorney are statutorily defined, Doc. No. 26, at 20, this provision does not preclude the possibility of dispute in the precise nature of Plaintiff's duties, and whether those duties require political allegiance.

established" is an objective one. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). The Court must not define clearly established law "at a high level of generality;"[4] rather, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S. Ct. at 2083.

Mashburn argues that "there is no clearly established law which provides that an assistant district attorney cannot be terminated for his association in an organization who[se] stated purpose could be considered contrary to the prosecution of crime." Doc. No. 26, at 19. What Mashburn appears to be arguing is that there is a distinguishing feature of the position of an assistant district attorney that renders termination for that attorney's membership in the ACLU nonviolative of the First Amendment. But he cites no evidence or authority for the proposition that Plaintiff's particular position required political allegiance, and he cites no authority for the contention that his position is relevant for another reason. The Court concludes that a reasonable official would know that terminating Plaintiff for being a member of the ACLU violated his right of association as that right is defined in *Button*, *Primus*, and *Copp*. Because Plaintiff has alleged the violation of his right of association and this right was clearly established at

---

[4] *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (citations omitted).

the time of his termination, Mashburn is not entitled to qualified immunity with respect to this claim.[5]

## B. Tortious Interference with Contract

Because Plaintiff consents to the dismissal of his tortious interference with contract claim, Doc. No. 27, at 2 n.1, this claim is dismissed.

## C. Tortious Interference with Prospective Economic Advantage

Mashburn next argues that Plaintiff fails to state a claim against him for tortious interference with prospective economic advantage. Doc. No. 26, at 21. This claim "usually involves interference with some type of reasonable expectation of profit." *Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846, 847-48 (Okla. Civ. App. 1984). To prevail, a plaintiff must allege and prove "the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted." *Lakeshore Cmty. Hosp., Inc. v. Perry*, 538 N.W.2d 24, 27 (Mich. Ct. App. 1995); *see also Brock v. Thompson*, 948 P.2d 279, 293 n.58 (Okla. 1997) (citing *Lakeshore* "for the elements of tortious interference with … prospective economic relations"); *Gonzalez v. Sessom*, 137 P.3d 1245, 1249 (Okla. Civ. App. 2006) (listing the same elements).

---

[5] Because the Court finds that Plaintiff has stated a claim for violation of his right of association with respect to his membership in the ACLU, and that Mashburn is not entitled to qualified immunity on this claim at this stage of the proceeding, the undersigned need not address Plaintiff's additional right of association claim for termination based on his membership in the Cleveland County Bar Association.

Mashburn cannot be held liable on this claim because in terminating Plaintiff, he was acting in a representative capacity for Plaintiff's employer, the Office of the District Attorney of the Twenty-first Prosecutorial District. "A cause of action for wrongful interference with contract can arise only when one who is not a party to a contract interferes with that contract by convincing one of the contracting parties to breach its terms." *Ray v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 894 P.2d 1056, 1060 (Okla. 1994). A defendant who was a party to the contract, in his representative capacity, cannot be held liable on such a claim. *Id.*; *see also Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1210 (Okla. 1996) ("Hugoton cannot be liable for wrongfully interfering with a contract if it was acting in a representative capacity for a party to that contract."). This limitation also applies to tortious interference claims when there was no contractual right to continued employment. *See Martin v. Johnson*, 975 P.2d 889, 896 (Okla. 1998) (distinguishing *Ray* and *Voiles* on a separate ground in a case in which a non-tenured teacher sued when her contract was not renewed).

Here, Plaintiff alleges that Mashburn "at all times was the elected official acting as the district attorney and the policy maker regarding personnel matters for the Twenty-first Prosecutorial District." First Am. Compl. ¶ 7. He also alleges that he "was hired as an assistant district attorney for the Twenty-first Prosecutorial District." *Id.* ¶ 8. Because Mashburn was a party, in his representative capacity, to the business relationship between

Plaintiff and the Office of the District Attorney for the Twenty-first Prosecutorial District, he cannot be liable for wrongfully interfering with that relationship.[6]

**D. Conspiracy**

Finally, Mashburn argues that Plaintiff fails to state a claim for conspiracy because he has not alleged an underlying unlawful act. Doc. No. 26, at 25. "A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or do a lawful act by unlawful means." *Brock*, 948 P.2d at 294 (footnote omitted). A mere conspiracy is insufficient. "To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means." *Id.* (footnote omitted). If the act complained of and the means employed are lawful, there is no liability. *Id.*

The Court has determined that Plaintiff states a claim for violation of his right of association. This is an unlawful act that can serve as the basis for Plaintiff's civil conspiracy claim. Further, Plaintiff alleges that "ALEXANDER and MASHBURN devised a scheme to mislead the press and public to avoid any adverse publicity," and that "MASHBURN and ALEXANDER elected to intentionally cause Plaintiff humiliation and harm." First Am. Compl. ¶ 28. These allegations are sufficient to state a claim for civil conspiracy.

---

[6] The Supreme Court of Oklahoma held in *Martin v. Johnson*, 975 P.2d 889, 896-97 (Okla. 1998), that "[i]f an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer we can divine no reason that the employee should be exempt from a tort claim for interference with contract." But *Martin* is inapplicable to the present case because Mashburn was Plaintiff's employer when it came to personnel decisions and he could not act contrary to his own interests. *See* First Am. Compl. ¶ 7; OKLA. STAT. ANN. tit. 19, § 215.34(C) (West) ("All assistant district attorneys shall serve at the pleasure of the district attorney.").

## Conclusion

In accordance with the foregoing, Mashburn's Motion to Dismiss Plaintiff's First Amended Complaint [Doc. No. 26] is GRANTED in part and DENIED in part. Plaintiff's tortious interference with contract and tortious interference with prospective economic advantage claims are dismissed. His § 1983 claims for violation of his right of association and conspiracy remain.

IT IS SO ORDERED this 12th day of May, 2015.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE